Mistee L. Elliott (Bar #6-3540)
Madeleine Lewis (Bar #7-6291)
Crowley Fleck PLLP
101 W. Brundage
Sheridan, WY 82801
(307) 673-3000
melliott@crowleyfleck.com
mlewis@crowleyfleck.com

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2021 FEB 10  PM 5:06

MARGARET BOTKINS, CLERK
CASPER

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

GAJAN MAHENDIRAN and AMUDHA
MAHENDIRAN, as individuals,

    Plaintiffs,

vs.

SUREN AJJARAPU, as TRUSTEE
OF THE ANNAPURNA GUNDLAPALLI
IRREVOCABLE TRUST 2010 and THE
SANDHYA AJJARAPU IRREVOCABLE
TRUST 2007,

    Defendants.

Case No.: 21CV21-J

### COMPLAINT

Gajan Mahendiran and Amudha Mahendiran (collectively "Plaintiffs") hereby file their Complaint against Suren Ajjarapu as Trustee of the Annapurna Gundlapalli Irrevocable Trust 2010 and the Sandhya Ajjarapu Irrevocable Trust 2007. In support, Plaintiffs allege and state as follows:

### PARTIES

1. Plaintiffs are citizens and residents of Virginia.

2. Suren Ajjarapu ("Suren") is a citizen of Florida. Upon information and belief, Suren claims to be the Trustee of the Annapurna Gundlapalli Irrevocable Trust 2010 and of the Sandhya Ajjarapu Irrevocable Trust 2007 (collectively the "Trusts"). Upon further information and belief, the Annapurna Gundlapalli Irrevocable Trust 2010 was purportedly created for the benefit of Suren's mother-in-law, and the Sandhya Ajjarapu Irrevocable Trust 2007 was purportedly created for the benefit of Suren's wife.

3. Plaintiffs, as tenants by the entireties, are members of Nexgen LifeSciences, LLC ("LifeSciences"), a Wyoming limited liability company.

4. Upon information and belief, Suren alleges that the Trusts are also members of LifeSciences.

5. This case arises out of a dispute between Plaintiffs and the Trusts as to the Trusts rights, if any, in LifeSciences, and harm alleged to have been done to Plaintiffs by Suren, as Trustee, as a result of his breach of contractual and fiduciary duties to Plaintiffs and his fraudulent inducement of Plaintiffs' investments in LifeSciences.

## JURISDICTION AND VENUE

6. Pursuant to Wyoming Statute § 17-29-106, Wyoming law governs the internal affairs of LifeSciences, including the rights of its members.

7. Pursuant to 28 U.S.C. § 1332(a), this Court has jurisdiction over the subject matter of this action due to diversity of citizenship.

8. Venue lies in the district under 28 U.S.C. § 1391(b)(3).

## Facts Common to All Claims

9. Plaintiff incorporates the allegations in paragraphs 1–8 above as though fully restated herein.

10. LifeSciences was formed as a Wyoming entity on January 30, 2015, for the primary purpose of entering into a contract with MSN Laboratories Private Limited, an India company ("MSN"), to develop pharmaceuticals in the United States of America.

11. The Articles of Organization state that LifeSciences will be managed by Members.

12. The Operating Agreement of LifeSciences (the "Operating Agreement") was executed by Plaintiffs, as initial members, and the Trusts, as purported initial members. The Operating Agreement states that the Trusts and Plaintiffs shall be the initial managing members upon payment of an initial capital contribution to LifeSciences commiserate with the member's intended ownership interest. A copy of the Operating Agreement is attached hereto as Exhibit "A".

13. Of the total initial capital contribution, Plaintiffs were to pay 50%, the Annapurna Gundlapalli Irrevocable Trust 2010 was to pay 20%, the Sandhya Ajjarapu Irrevocable Trust 2007 was to pay 30%, and membership interests were to be allocated accordingly.

14. It was the parties' clear intent in executing the Operating Agreement that the intended initial managing members were required to make the initial capital contribution to LifeSciences as a condition precedent to gaining membership and/or managerial authority.

15. Initial capital contributions were to be made at the time of filing the Articles of Organization with the Wyoming Secretary of State.

16. On or about January 31, 2015, Plaintiffs timely made their initial capital contribution in the amount of $50,000. At the direction of Suren, Plaintiffs tendered this capital contribution by check made payable to Sansur Associates, LLC ("Sansur"), an entity owned by Suren, referencing LifeSciences in the memo of the check. Plaintiffs made another capital contribution of $50,000 on or about March 4, 2015, again payable to Sansur and referencing

LifeSciences in the memo. Plaintiffs' contributions of $100,000 that were paid to Sansur in partial payment of their capital contribution are believed to have been retained by Sansur.

17. Plaintiffs made additional capital contributions directly to LifeSciences on or about October 9, 2015 ($100,000), November 9, 2015 ($25,000), and February 16, 2016 ($150,000). In sum, Plaintiffs' capital contributions to LifeSciences total $375,000, and were each made at the direction of Suren.

18. Suren, as Trustee, has failed and refused to make any capital contributions on behalf of the Trusts, the only other purported members of LifeSciences.

19. On or about April 30, 2015, Suren executed a Collaboration and Supply Agreement with MSN (the "MSN Contract") in his purported capacity as a managing member of LifeSciences. The MSN Contract provided for the development and marketing of three pharmaceuticals: 1) Moxifloxacin; 2) Rosuvastatin; and 3) Capecitabine (collectively the "Contract Pharmaceuticals").

20. Pursuant to its obligations under the MSN Contract, LifeSciences contributed, or had contributions made on its behalf, of more than $800,000 to MSN for the development and marketing of the Contract Pharmaceuticals (the "LifeSciences Funds"), all at the direction of Suren who had sole control of the bank account(s) of LifeSciences. The LifeSciences Funds included Plaintiffs' capital contributions, and upon information and belief, other funding sources arranged by Suren from various companies owned or controlled in whole or in part by Suren. Upon further information and belief, Suren's use of funds from companies he owned or controlled was part of a pyramid-type scheme intended to defraud investors like Plaintiffs.

21. MSN breached the MSN Contract by forming Novadoz Pharmaceuticals, located at 20 Duke Road, Suite A, Piscataway, NJ 08854-3714 ("Novadoz"), to replace Lifesciences in the marketing of the Contract Pharmaceuticals.

22. MSN, acting by, through and in conjunction with Novadoz, engaged in extensive developing, marketing and sales of the Contract Pharmaceuticals while intentionally and wrongfully excluding Lifesciences, all in violation of the MSN Contract.

23. MSN and Novadoz have wholly failed to provide an accounting for the sales of the Contract Pharmaceuticals.

24. MSN and Novadoz have refused to return the Lifesciences Funds and have refused to share any of the profits made from the Contract Pharmaceuticals.

25. The services or materials were furnished under such circumstances as would reasonably notify MSN and Novadoz that Lifesciences expected to be paid, either through reimbursement of Lifesciences Funds or by sharing in profits from sale of the Contract Pharmaceuticals, and that without such payment MSN and Novadoz were unjustly enriched.

26. MSN breached the MSN Contract and has retained and continues to retain the LifeSciences Funds without justification. In addition to wrongfully retaining the LifeSciences Funds, MSN has refused to share profits from the Contract Pharmaceuticals with LifeSciences. Upon information and belief, LifeSciences will need to file a lawsuit against MSN and Novadoz to try to recover the LifeSciences Funds and other damages it is owed under the MSN Contract.

27. In a separate lawsuit filed in the United States District Court, Middle District of Florida, Tampa Division, Case No.: 8:20-cv-02263-VMC-JSS (the "Florida Litigation"), Suren alleges that "Mahendiran, as 50% shareholder of Nexgen Life Sciences, deliberately caused a deadlock among the shareholders of Nexgen Life Sciences by refusing to allow Nexgen Life Sciences to pursue a breach of contract claim or any other claim against MSN." This allegation by Suren is not true. To the contrary, it is Suren, in his purported capacity as a managing member of LifeSciences, that has prevented the company from pursuing a claim against MSN.

28. Further, LifeSciences has recently been joined as a party to the Florida Litigation, which was initiated by other investors who, like Plaintiffs, invested in one of Suren's many companies and have allegedly lost their investment. A dispute exists between Suren, as the purported Trustee of the Trusts, and Plaintiffs, as to their respective rights as members and managers with regard to, among other things, the defense of LifeSciences in the Florida Litigation.

29. Suren induced Plaintiffs to contribute capital to LifeSciences in exchange for an ownership interest in the company. Suren has since controlled the flow of moneys in and out of LifeSciences, to the detriment of Plaintiffs and LifeSciences, and has purposely and intentionally failed to contribute any funds on behalf of the Trusts, for whom Suren purports to act.

30. Suren's actions as a purported manager of LifeSciences, and the Trusts' refusal to contribute any capital to LifeSciences since its creation in 2015, have caused harm to Plaintiffs.

31. It is not in the best interests of Plaintiffs or LifeSciences for Suren to remain a voting manager or for the Trusts to remain voting members of the company.

## COUNT I – INJUNCTIVE RELIEF

32. Plaintiffs incorporate the allegations in paragraphs 1–31 above as though fully restated herein.

33. In order to adequately protect their interests in LifeSciences, Plaintiffs are in immediate need of full management authority of the company for the purpose of managing the defense of LifeSciences in the Florida Litigation and to prosecute LifeSciences' claims against MSN and Novadoz without interference of any type from Suren. As follows in this Complaint, the rights of Suren, as purported Trustee, to membership and/or management rights in LifeSciences are in dispute, and for the reasons expressed herein the Court should preclude Suren from

exercising any purported authority in the operation and management of LifeSciences until resolution of this matter.

34. If not so enjoined, Suren will continue to violate the Trusts' contractual and fiduciary duties to Plaintiffs through such actions as, but not limited to, interfering with and precluding a defense of LifeSciences in the Florida Litigation, as well as inhibiting prosecution of the breach of contract and any other claims against MSN and Novadoz.

35. Suren's bad faith interference has caused, and continues to cause, irreparable harm to Plaintiffs' investments and rights in and under the Operating Agreement.

36. This violation cannot be remedied simply by an award of damages.

37. Plaintiffs are likely to prevail in this matter. Suren's conduct—and specifically his failure as purported Trustee to make an initial capital contribution to LifeSciences—is a clear violation of his contractual and fiduciary duties under the Operating Agreement and Wyoming law, as well as the implied covenant of good faith and fair dealing owed to Plaintiffs.

38. The Court should immediately issue a preliminary injunction that precludes Suren, as Trustee, from exercising the voting and managerial authority he purports to possess under the Operating Agreement, and award Plaintiffs sole authority to manage the interests of LifeSciences for the limited purposes of defending the Florida litigation and pursuing the breach of contract and any other claims against MSN and Novadoz. At the conclusion of this matter, Plaintiffs also request the Court issue a permanent injunction on all of Suren's wrongful conduct described herein.

## COUNT II – Dissociation

39. Plaintiffs incorporate the allegations in paragraphs 1–38 above as though fully restated herein.

40.  This is a direct claim pursuant to Wyoming Statute § 17-29-901 against Suren, as purported Trustee of the Trusts, for dissociation.

41.  In light of Suren's actions as described herein, Plaintiffs have suffered personal and actual injuries to their membership rights and interests under the Operating Agreement within the contemplation of Wyoming Statute § 17-29-901(a).

42.  Suren, as purported Trustee, has engaged in wrongful conduct that has adversely and materially affected LifeSciences' activities, including but not limited to sourcing operating funds for LifeSciences from his other businesses, to the detriment of Plaintiffs and for Suren's own benefit. By virtue of this wrongful conduct, Suren has deprived Plaintiffs of their right to receive the benefit of the Operating Agreement.

43.  Suren, as purported Trustee, has willfully or persistently committed a material breach of the Operating Agreement by refusing to make the requisite capital contributions for the Trusts. By virtue of this breach, Suren has failed to satisfy a condition precedent to the Trusts obtaining membership interests in LifeSciences.

44.  Suren, as purported Trustee, has and continues to engage in conduct relating to LifeSciences' activities which make it not reasonably practicable to carry on the activities of the company with the Trusts as members. Upon information and belief, the nature of Suren's wrongful conduct in this regard is such that it would be unlawful to carry on the company's activities with the Trusts as members.

45.  In light of Suren's conduct, the Trusts should be dissociated as members of LifeSciences pursuant to Wyoming Statute § 17-29-602(a)(ii), (iii), leaving Plaintiffs as the sole members and managers of the company.

## COUNT III – Declaratory Judgment (Alternatively to Count II)

46. Plaintiffs incorporate the allegations in paragraphs 1–45 above as though fully restated herein.

47. A substantial and justiciable controversy exists as to the rights of Plaintiffs and the Trusts regarding ownership and management rights under the Operating Agreement.

48. Pursuant to the Wyoming Declaratory Judgments Act, Wyoming Statute § 1-37-101 *et seq.*, it is necessary for this Court to judicially determine and declare the rights, responsibilities, and obligations of the parties in this matter.

49. Pursuant to the Operating Agreement, Plaintiffs and the Trusts intended for membership to be conditioned on, and the allocation of ownership interest determined by, payment of the requisite initial capital contributions.

50. Plaintiffs are entitled to an order from the Court declaring that the Trusts are not members of LifeSciences due to the failure of the condition precedent requiring the Trusts to make an initial capital contribution. In the alternative, the Plaintiffs are entitled to a declaration that the Trusts may not exercise any rights as members under the Operating Agreement, including management rights, which shall be solely vested in Plaintiffs, unless and until the Trusts satisfy their initial capital contributions.

## COUNT IV – Breach of Contract (Alternatively to Count II)

51. Plaintiffs incorporate the allegations in paragraphs 1–50 above as though fully restated herein

52. Suren, as purported Trustee, had an obligation pursuant to the Operating Agreement to make initial capital contributions on behalf of the Trusts.

53. Suren has failed and refused to make such capital contributions, which constitutes a breach of the Operating Agreement and a failure to fulfill a condition precedent to the Trusts obtaining membership in LifeSciences.

54. As a result of Suren's breach, Plaintiffs had to contribute the amount of the Trusts' delinquent contributions ("Plaintiffs' Additional Contribution"). Plaintiffs' Additional Contribution constitutes a loan from Plaintiffs, bearing interest at the Default Interest Rate and secured by the Trusts' interest in LifeSciences, if any.

55. Pursuant to the Operating Agreement, Plaintiffs have given Suren notice of the Trusts' failure to perform their commitment to provide initial capital contributions. More than ten days has passed since that notice was given and no payment has been made.

56. Plaintiffs are entitled to a judgment against Suren, as purported Trustee, in the amount of Plaintiffs' Additional Contribution, plus interest and attorney's fees, and any additional damages to be determined at trial.

## COUNT V—Breach of Implied Covenant of Good Faith and Fair Dealing (Alternatively to Count II)

57. Plaintiffs incorporate the allegations in paragraphs 1–56 above as though fully restated herein.

58. The Operating Agreement is a valid and enforceable commercial contract between Plaintiffs and the Trusts.

59. The implied covenant of good faith and fair dealing is inherent in every commercial contract and requires that neither party to the contract commit an act that would injure the rights of the other party to receive the benefit of the contract.

60. The implied covenant of good faith and fair dealing required the actions of Suren, as purported Trustee, to be consistent with the agreed common purpose and justified expectations of Plaintiffs.

61. The implied covenant of good faith and fair dealing required Suren, as purported Trustee, to not commit an act that would injure Plaintiffs' rights to receive the benefits of the Operating Agreement.

62. Suren, as purported Trustee, breached the implied covenant of good faith and fair dealing by willfully failing to satisfy the Trusts' obligations to make initial capital contributions to LifeSciences, by entering into the MSN Contract knowing that the initial capital contribution of Plaintiffs was not sufficient to cover the LifeSciences Funds, and by refusing to acknowledge that Plaintiffs should possess sole management authority of LifeSciences as the only members that have contributed the requisite capital.

63. As a result of this breach, Suren injured Plaintiffs' right to receive the benefits of the Operating Agreement.

64. As a direct and proximate result of Suren's breach, Plaintiffs have been damaged, in an amount to be determined at trial.

## COUNT VI – Breach of Fiduciary Duties (Alternatively to Count II)

65. Plaintiffs incorporate the allegations in paragraphs 1–64 above as though fully restated herein.

66. Wyoming Statute § 17-29-409 provides the standards of conduct for members of a limited liability company.

67. Members of a limited liability company owe each other and the company the fiduciary duties of loyalty and care.

68.  Suren, as purported Trustee and manager of LifeSciences, failed to adhere to the business judgment rule and exercise reasonably appropriate judgment in the fiscal management of LifeSciences when he failed to satisfy the Trusts' obligations to make initial and additional necessary capital contributions, when he entered into the MSN Contract knowing that capital sufficient to cover LifeSciences' obligations had not been contributed, and when he improperly sourced operating funds for LifeSciences from his other businesses to the detriment of LifeSciences, and upon information and belief, for the benefit of himself and his other companies.

69.  As a direct and proximate result of Suren's breach of fiduciary duties, Plaintiffs have been damaged, in an amount to be determined at trial.

WHEREFORE, Plaintiffs respectfully request that judgment be entered against Defendants as requested above and that, where appropriate, the Court award Plaintiffs injunctive relief, damages, prejudgment interest and post-judgment interest as allowed by law, costs, reasonable attorneys' fees, declaratory relief, and such other relief as the Court deems proper.

DATED this 10th day of February, 2021.

CROWLEY FLECK PLLP

By: _____
Mistee L. Elliott (Bar #6-3540)
Madeleine Lewis (Bar #7-6291)
Crowley Fleck PLLP
101 W. Brundage
Sheridan, WY 82801
(307) 673-3000
melliott@crowleyfleck.com
mlewis@crowleyfleck.com